STOUT *v.* STOUT.

1. DIVORCE—GROUNDS STATED IN BILL—"PUBLIC POLICY."

Where a decree of divorce was granted the husband upon motion of his counsel, it should be treated as granted upon the grounds stated in the bill, although language used by the court would indicate that it was granted on the grounds of "public policy."

2. SAME—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.

In proceedings for a divorce by a husband on the ground of extreme cruelty, where defendant filed a cross-bill on the same grounds, evidence *held,* sufficient to sustain a decree for plaintiff, although he was also guilty of acts of cruelty while irresponsible.

3. SAME.

Defendant's claim that plaintiff had surrendered his interest in a land contract to 60 acres of land, *held,* not supported by the record.

4. SAME—ALIMONY—DIVISION OF PROPERTY.

On appeal, the decree of the court below dividing the property and awarding to plaintiff husband a small amount of the household goods is affirmed, except as to the household goods awarded to plaintiff, which, being too vague to be enforced, will be eliminated.

Appeal from Ionia; Moinet (Edward J.), J., presiding. Submitted June 9, 1920. (Docket No. 27.) Decided July 20, 1920.

Bill by Charles J. Stout against Jennie Stout for a divorce. From a decree for plaintiff, defendant appeals. Modified, and affirmed.

*Watt & Colwell,* for plaintiff.

*Fred L. Warner,* for defendant.

STONE, J. The parties to this cause were married on January 2, 1900, and they lived together as husband and wife until the month of July, 1918, except

as the plaintiff was absent from home on a number of occasions, as will be hereinafter stated. On March 2, 1903, the plaintiff purchased by land contract a farm of 60 acres, from one Lovely. This land was in the township of Maple Valley, county of Montcalm. The actual consideration for this purchase was $1,-525. The plaintiff paid at the time the contract was signed $300, and the contract provided for the payment of the remaining $1,225 within five years with interest at 6 per cent. per annum. The parties moved onto the farm soon after its purchase and lived there until 1910, when they moved to Belding, Ionia county, where the defendant has since resided.

The plaintiff, by reason of some injury which he received prior to his marriage, became totally deaf. He also became insane on at least three occasions, the first time being before his marriage. In 1909 he was sent to the asylum at Traverse City, where he remained for about four months; and again in July, 1915, he was sent by the proper authorities to the same asylum, where he remained until May, 1917, when he left that institution of his own accord and returned to the farm in Montcalm county.

The plaintiff, on November 14, 1918, filed the bill herein in Ionia county where the defendant then resided, he having been previously, by the probate court of Ionia county, declared to be restored to soundness of mind. In his bill of complaint plaintiff charged the defendant with various acts of personal violence amounting to extreme cruelty, and also with having attempted, in July, 1918, while the plaintiff was perfectly sane, to cause him to be returned to the asylum at Traverse City.

The defendant answered denying all of the acts of cruelty charged by plaintiff, and by cross-bill charged plaintiff with being guilty of extreme cruelty, and prayed for a decree of divorce, and for other affirma-

tive relief. The plaintiff answered the cross-bill denying its allegations of extreme cruelty.

It appears that the parties have five living children —three of whom are under 14 years of age, to wit: Georgia aged 13 years, Durward aged 11 years, and Imogene aged 7 years. Durward is living with the plaintiff, and the other two are with the defendant. At the hearing there was much conflict in the testimony of the parties. Each party was by the other charged with personal violence and assault, and also with acts of extreme cruelty to the children.

Unfortunately the children of the parties have taken sides in the controversy, some testifying for one party and some for the other. There is no doubt that the plaintiff, by reason of his extreme deafness, is a person of irritable disposition. In fact the learned circuit judge who heard the testimony, in his opinion, said:

"Some of the alleged cruelty upon both sides, has, in a measure, been due to the condition of the plaintiff. However, his appearance upon the stand indicates that, even though he is mentally responsible, he has a very irritable disposition, probably due in part to his defective hearing."

We have carefully read this record, but shall not quote from the testimony. There was ample testimony on behalf of plaintiff to sustain the charge of extreme cruelty of the defendant. Some of the acts of defendant were committed when the plaintiff was irresponsible. Some, and we think, most of the acts of the plaintiff, which are complained of by the defendant, were committed at a time when he was insane, and therefore irresponsible. In our opinion the plaintiff is entitled to a decree upon the ground of extreme cruelty of the defendant. This, as we understood the opinion and decree, is what the court below granted. There is some language used by the court

in its opinion and decree that would indicate that the decree was granted on the grounds of "public policy." This expression, we think, was used to indicate that, in the opinion of the court, the parties have become so estranged that it will be impossible for them to properly resume their relations of husband and wife. A similar expression was used by this court in *Utley* v. *Utley*, 155 Mich. 258, and in *Tiffin* v. *Tiffin*, 209 Mich., at page 237.

In the instant case the decree of divorce was granted on motion of counsel for the plaintiff, upon the evidence at the hearing, and should, we think, be treated by us as a decree for the plaintiff upon the grounds stated in the bill of complaint.

Counsel for both parties seem to agree that a divorce should be granted in the case. The counsel for defendant says in his brief: "The parties are so irreconcilably separated that they can never live together"; he claims, however, that the divorce should be granted to the defendant. In this latter claim we do not agree with counsel. The principal controversy is with reference to the disposition of the property, and that subject remains to be considered. There is no question that the land contract of March 2, 1903, was given to the plaintiff as purchaser, and this contract does not appear to have been surrendered, according to the claim of the plaintiff. He made the first payment of $300, and seems to have paid at least $200 afterwards, and the payment of $427.50 of October 12, 1912, was received as insurance on the barn on the farm, which was burned. The defendant denied that the plaintiff had at the time of the hearing any interest in the farm, her claim being that in 1911 the plaintiff surrendered his contract and gave her whatever interest he had in the land, and that later, and in April, 1912, Lovely executed a new contract running to her, and that she had made payments thereon reducing the

211—Mich.—16.

amount unpaid to $272, which appeared to be the sum due at the hearing. Most of the payments made by defendant were the proceeds of crops raised on the farm.

Upon this subject the testimony of the parties cannot be reconciled. After reading and considering all of the testimony upon the subject, we are of the opinion that the plaintiff never surrendered his contract; that the defendant got possession of the papers without the consent of plaintiff, and that his equities in the land are superior to those of defendant. The circuit judge seems to have had some doubt as to the claim of the defendant upon this question. In his opinion he said:

"As to the sixty acres of land, which defendant claims to own entirely, the court is considerably in doubt as to her claims in that respect, although some evidence is given that she made a number of payments upon the contract, and the court is of the opinion that in order to arrive at an equitable adjustment of their property matters, the farm will be sold at a price agreed upon by the parties, and the proceeds, less the balance due on the contract, shall be equally divided between the parties; if the parties are unable to agree upon a price for said farm, the sale thereof may be made by a circuit court commissioner at public sale, and the expense thereof paid from the proceeds of such sale,"

—and the decree so provides.

The decree, after dissolving the marriage, gave the custody of the boy Durward to the plaintiff, and making it the duty of the plaintiff to provide a suitable home for the child, other than in a hotel or other public place. It gave the custody and control of the girls, Georgia and Imogene, to the defendant, and provided that if at any time the mother's pension, awarded the defendant by the probate court of Ionia county, should be discontinued, then and in such case the

plaintiff shall pay to the clerk of said court, for the use and benefit of the defendant, to enable her to support, maintain and educate the two minor children above mentioned $2.50 per week for each child until they shall respectively attain the age of 14 years, which sum shall be paid every two weeks by the plaintiff, and that after said children arrive at the age of 14 years, the court will determine the amount of support to be awarded said minor children.

In disposing of certain moneys, the proceeds of crops raised on the farm, it was decreed that defendant should be entitled to retain the sum of $194.65 then in her hands, and should also receive from the moneys then deposited with the clerk of the court the further sum of $80.35, and that the balance of the moneys in the hands of the clerk should be paid over to the plaintiff, to wit, $173.99. The decree further provided that the plaintiff should receive from the household goods of the parties such a small amount as would be necessary for his use; and made provision that either of the parties should have the right to visit the children in the custody of the other party, at any reasonable time or place, and that defendant should have the right to have the child Durward with her, in her home, a reasonable period of time. No costs were awarded to either party.

Since the case was appealed, this court, upon petition of the defendant, has allowed her to draw from the $254.34 in the hands of the clerk the sum of $180.35, leaving $73.99, which, on petition of plaintiff, has been paid to him. The order of this court provided that the amount so paid to the defendant should be taken into consideration in determining the rights of the parties upon the final decree of this court. Aside from the provision relating to the awarding to plaintiff a small amount of the household goods of the parties, we think the decree is a just and equi-

table one. In our opinion the defendant should have all of the household goods and furniture.

The plaintiff has not appealed, and the order relating to his right to a part of the household goods is too vague to be enforced, and it will be eliminated from the decree.

In all other matters, and as thus modified, the decree below will stand affirmed. In view of the amount awarded to defendant by order of this court, no costs will be awarded to either party.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.